UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

VICTORIA LYNN NUNES,

    Plaintiff,

v.

NANCY A. BERRYHILL,

    Defendant.

Case No. 17-cv-00706-RMI

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 19, 27

Plaintiff, Victoria Lynn Nunes, seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. The ALJ's decision is therefore the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (Docs. 10 & 13), and both parties have moved for summary judgment (Docs. 19 & 27). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## PROCEDURAL HISTORY

In January of 2013, Plaintiff filed applications for benefits under Titles II and XVI, alleging an onset date of March 8, 2012. (Doc. 16, Administrative Record "AR" at 22). The ALJ denied the applications on October 27, 2015 (AR at 19), and the Appeals Council denied Plaintiff's request for review on December 19, 2016 (AR at 1-5).

## SUMMARY OF THE RELEVANT EVIDENCE

Plaintiff alleges that she suffers from the following impairments: muscular dystrophy with chronic pain, cardiac impairments requiring the use of a pacemaker, deep vein thrombosis, as well as irritable bowel syndrome ("IBS") resulting in chronic diarrhea, abdominal pain, and weight loss. Pl.'s Mot. (Doc. 19) at 7-9. The ALJ determined that the following of Plaintiff's impairments were severe: IBS, depression, post-traumatic stress disorder ("PTSD"), muscular dystrophy, status post pacemaker, bilateral shoulder acromioclavicular joint separation, and borderline personality disorder. (AR at 25).

### *Plaintiff's Presentation of Evidence and a Theory Under Listing 5.08:*

Plaintiff's pre-hearing brief (dated June 20, 2015) explicitly identified that she had "difficulty eating and gaining weight"; that she had been diagnosed with IBS and that her prognosis was poor; and that her gastrointestinal issues caused abdominal cramping and extreme diarrhea occurring up to eight times per day. (AR at 382-86). Additionally, during the course of the hearing before the ALJ, Plaintiff clearly presented a Listing 5.08 theory in her own words. (*See* AR at 52-53). Responding to the ALJ's inquiry, Plaintiff described the severity of her IBS episodes ("I have IBS severe"), and noted that her IBS resulted in severe diarrhea which in turn

2

caused her to suffer extreme weight-loss ("I can't keep weight on"). (*Id*.). Plaintiff stated that the episodes lasted as long as three days each, and occurred on at least two or three occasions per month. (*Id*.). Plaintiff added that anti-nausea and anti-diarrhea medications had not been effective. (*Id*. at 53).

### *Medical Evidence Pertaining to Listing 5.08:*

Plaintiff's alleged disability onset date was March 8, 2012. (AR at 22). Her medical evidence of a gastrointestinal disorder resulting in weight-loss and low body-mass-index ("BMI") numbers[1] predated the alleged onset date by several months. *See* Pl.'s Mot. (Doc. 19) at 10.

On September 21, 2011, Plaintiff was treated by Harry Matossian, M.D., a specialist in gastroenterology. (AR at 398). Dr. Matissian's records reflect that Plaintiff had been referred to his care following her visit to an emergency room complaining of diarrhea lasting four weeks with 6 liquid bowel movements per day, and having lost five pounds as a result. (*Id*.). Dr. Metossian measured Plaintiff's height to be 5 feet, 7 inches (or 170.2 cm), her weight was measured at 100 pounds (or 45.4 kg), yielding a BMI of 16. (*Id*. at 399). Plaintiff reported to her physician that this four-week episode was the second one of the year, as she had experienced a similar bout in March of 2011. (*Id*. at 398). Dr. Metossian's physical examination found Plaintiff's abdomen to be "quite tender on moderate palpitation in all quadrants, with very hyperactive bowel sounds in all quadrants." (*Id*. at 399). At the time, his impression was "chronic diarrhea of unclear etiology." (*Id*.).

In early November of 2011, Plaintiff visited her primary care health care provider and her BMI was measured at 16.21. (*Id*. at 537). The following month, in December of 2011, she returned complaining of bloating and cramping with intermittent diarrhea and constipation; her BMI was measured at 16.44. (*Id*. at 561-62). In February of 2012, she returned with complaints of diarrhea and resulting weigh loss; her BMI was measured at 15.66. (*Id*. at 616-17). The assessment on this occasion was that the etiology of Plaintiff's inability to gain weight was unclear, and that it

---

[1] BMI is a height-weight ratio that is derived when a person's weight, in kilograms, is divided by the square of their height, in meters. Patients with BMI numbers falling below 18.5 are generally considered underweight. *Centers for Disease Control and Prevention – About Adult BMI*: https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html

3

may be related to her IBS. (*Id*. at 617). Less than two weeks later, Plaintiff returned complaining of daily diarrhea, difficulty eating, and difficulty gaining weight; her BMI was measured at 15.66. (*Id*. at 626-27).

One week before the alleged onset date, on March 1, 2012, Plaintiff's IBS and associated weight loss were noted again by her primary care provider. (*Id*. at 651). On this occasion, Plaintiff complained about further weight loss due to her IBS symptoms; her BMI was measured at 15.51. (*Id*. at 651-52). Thereafter, in March and April of 2012, Plaintiff's BMI was measured on three occasions which were, respectively, BMI 15.82 (*id*. at 659), BMI 16.13 (*id*. at 667-68), and BMI 16.13 (*id*. at 682). On May 24, 2012, Plaintiff returned to her primary health care provider to complain of abdominal pain lasting five days; her BMI was measured at 16.13. (*Id*. at 695-96).

The following month, on May 29, 2012, Plaintiff was treated again by her gastroenterologist, Dr. Harry Metossian. (*Id*. at 395-97). Dr. Metossian noted the history of Plaintiff's disorder as including diarrhea, resulting weight loss, and sharp abdominal pain lasting in excess of two weeks. (*Id*. at 395). Dr. Metossian's physical examination notes described plaintiff's constitution as "extremely thin," and noted tenderness throughout her abdomen (*Id*. at 396). While Dr. Metossian was uncertain as to the cause of Plaintiff's sharp abdominal pains, his impression noted "the possibility of [the abdominal pain] being due to her frequent diarrhea and IBS is certainly possible." (*Id*.). During this visit, Dr. Metossian measured Plaintiff's BMI at 16.00. (*Id*.).

Two weeks later, on June 12, 2012, Plaintiff visited her primary care provider complaining of abdominal pain, nausea, and further weight loss; on this occasion, her BMI was measured at 15.51. (*Id*. at 713-14). At her June 21, 2012, follow-up visit with Dr. Metossian, treatment notes describe Plaintiff as complaining of still having up to eight episodes of diarrhea per day, that Plaintiff still only weighed 100 pounds, and that she was "chronically ill-appearing." (*Id*. at 394). In early August of 2012, Plaintiff returned to her primary care provider on two occasions complaining of abdominal pain and dizziness; on August 7th, her BMI was measured at 15.51. (*Id*. at 743-44, 750). Plaintiff returned on August 20, 2012, complaining of abdominal pain and continued weight loss; her BMI was measured at 15.19. (*Id*. at 757-58). The weight loss and

4

abdominal pains continued to worsen; on August 30, 2012, Plaintiff's primary care provider noted that her weight had dropped to only 87 pounds, yielding a BMI of 13.63. (*Id*. at 766-67). By September 6, 2012, Plaintiff had regained some of that weight as her primary care provider measured her weight at 98 pounds, yielding a BMI of 15.35. (*Id*. at 769-70). However, subsequent visits to her primary care provider on September 17th, 18th, and 27th of 2012 saw her weight drop down to 94 pounds, yielding a BMI of 14.72. (*Id*. at 777, 781, 792). Plaintiff's BMI was calculated again by her primary care provider on October 10th, November 15th and 21st of 2012, yielding BMI measurements of 14.88, 15.04, and 15.19 respectively. (*Id*. at 806, 821, 829).

Plaintiff's treating gastroenterologist, Dr. Metossian, referred Plaintiff for further examination at UCSF, which took place on September 25, 2012. (*Id*. at 1157-61). Plaintiff's treating physician at UCSF, Jonathan Terciman, M.D., measured her BMI at 15.26. (*Id*. at 1159). Dr. Terciman's assessment was that Plaintiff's history of chronic diarrhea and abdominal pain could possibly be rooted in inflammatory bowel disease ("IBD"), or colitis; however, he noted "that this most likely represents IBS diarrhea predominant[ly] because her symptoms have actually improved with a trial of oral narcotics." (*Id*. at 1160). Dr. Terciman's plan for further assessment suggested abdominal imaging over time in order to determine whether there is "evidence of small bowel thickening or dilation that would suggest IBD (Chrohn's)…" (*Id*.).

On January 2nd, 11th, 16th, and 23rd of 2013, Plaintiff was examined again and her BMI was measured at 14.88, 15.35, 14.88, and 14.88 respectively. (*Id*. at 848-49, 870-71, 881-82). During the course of her examination of January 16, 2013, Plaintiff complained of persistent diarrhea starting early in the morning with as many as eight episodes per day. (*Id*. at 870). On February 4, 2013, Plaintiff's examination yielded a BMI measurement of 14.88. (*Id*. at 894-95). Plaintiff was examined again on March 4th and 11th of 2013, yielding BMI measurements of 15.43 and 15.50. (*Id*. at 926, 931).

On May 20, 2013, Plaintiff was examined and her BMI was measured at 15.03 with a notation to the effect, "dressed without shoes." (*Id*. at 1021). On October 7th and 24th of 2013, Plaintiff's weight appears to have experienced an increase (her BMI measurements were 17.07 and 17.70), however, the measurements may have been imprecisely derived as they were both attended

with a "dressed with shoes" notation. (*Id*. at 1100, 1083). During her examination of October 24, 2013, Plaintiff was also diagnosed with an eating disorder as she now presented complaints about body image and feeling overweight while complaining that she felt "addicted" to laxatives. (*Id*. at 1079, 1081). During the course of an examination on November 1, 2013, Plaintiff's BMI was measured at 18.32 attended with a "dressed with shoes notation." (*Id*. at 1070). On that occasion Plaintiff informed her primary care physician that given that her weight had recently increased to 117 pounds, she felt poorly about the amount of weight gain and had begun taking two laxatives a day to lose some of the weight. (*Id*. at 1069).

Nevertheless, during subsequent examinations, on February 24 and April 3, 2014, Plaintiff's BMI was measured at 16.91 and 16.92, and these measurements were also attended with a "dressed with shoes" notation. (*Id*. at 2010, 1875). During an examination on June 18, 2014, her BMI was measured at 17.38. (*Id*. at 1812).

### *Plaintiff's Other Impairments:*

The ALJ found that, in addition to IBS, Plaintiff also suffered from the following severe impairments: bilateral shoulder acrimioclavicular joint separation, muscular dystrophy, a prior cardiac condition requiring a status post pacemaker, depression, post-traumatic stress disorder, and borderline personality disorder.

### **THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[2] The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that

---

[2] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will generally cite to the SSI regulations herein unless noted otherwise.

6

the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. (*See* AR at 23-34).

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (AR at 25).

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: IBS, bilateral shoulder acrimioclavicular joint separation, muscular dystrophy, a prior cardiac condition requiring a status post pacemaker, depression, post-traumatic stress disorder, and borderline personality disorder. (AR at 25). Finally, the ALJ found that Plaintiff's deep vein thrombosis was non-severe, and that the possibility of Plaintiff having lupus had not been medically determined. (*Id*.).

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR at 25-26). Next, the ALJ determined that Plaintiff retained the RFC "to perform light work" with several physical and environmental limitations. (AR at 26-32).

At Step Four, the ALJ determined that Plaintiff is unable to perform any past relevant

7

work. (AR at 32).

At Step Five, the ALJ concluded that based on the testimony of the vocational expert, and the ALJ's formulation of the RFC, that Plaintiff was capable of making a successful adjustment to work that existed in significant numbers in the national economy; and thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from March 8, 2012, through the date of the decision. (AR at 33-34).

**ISSUESS PRESENTED**

Plaintiff presents three issues for review. The first assigns error to the ALJ's failure to evaluate whether Plaintiff's IBS met or equaled Listing 5.08 at Step Three. Plaintiff's second issue assigns error to the ALJ's formulation of the RFC by giving inadequate weight to the opinions of Plaintiff's treating and examining physicians. Plaintiff's third issue assigns error to the ALJ's Step Five determination by relying on vocational expert testimony elicited in response to an incomplete hypothetical question.

**DISCUSSION**

Plaintiff argues that she met the requirements for Listing 5.08 (certain weight-loss due to any digestive disorder) throughout the relevant period; that she has met her burden to show that she is presumptively disabled at Step Three; and that the case should be remanded for the calculation and payment of benefits. Pl.'s Mot. (Doc. 19) at 11. The Commissioner responds by asserting a waiver defense, as well as by arguing that "it is not clear that Plaintiff meets the requirements of Listing 5.08, as it (sic) uncertain whether Plaintiff's low weight is due to her digestive issues or her anxiety and depression, or whether she has been fully compliant on her medications to resolve her digestive issues." Def.'s Mot. (Doc. 27) at 11.

As to the waiver defense, it is argued that Plaintiff waived the right to assert the ALJ's Step Three error in this court due to the suggestion that "Plaintiff never raised this issue in the underlying administrative proceedings, and therefore has waived the right to challenge the ALJ's decision on that basis." Def.'s Mot. (Doc. 27) at 10. Specifically, the Commissioner asserts that Plaintiff failed to present the ALJ with evidence, or a theory, in an effort to establish Listing 5.08 equivalence. *Id*. The Commissioner's waiver argument is without merit as it is contradicted by the

8

1 record.

2       "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, <u>unless</u> the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (emphasis supplied). Here, Plaintiff presented an abundance of such evidence. It can not be reasonably contended that Plaintiff "never raised this issue," or that she failed to present evidence in an effort to establish an equivalency determination for a number of reasons. First, in a pre-hearing brief filed before the ALJ, Plaintiff noted that she had "difficulty eating and gaining weight" due to having been diagnosed with IBS, which had caused cramping and persistent diarrhea resulting in weight loss. (AR at 382-86). Second, at the hearing before the ALJ, and in response to the ALJ's own inquiry about Plaintiff's gastrointestinal disorders, Plaintiff clearly presented her Listing 5.08 theory in her own words: "I have IBS severe . . . I can't keep weight on." (AR at 52-53). Plaintiff further informed the ALJ that the episodes of persistent and extreme diarrhea lasted up to three days each, occurring on at least two or three occasions per month, and that anti-nausea and anti-diarrhea medications had not been effective. (*Id*.). Third, the record is teeming with medical evidence supporting a Listing 5.08 equivalency; evidence which Plaintiff had gathered from her primary care provider, from her gastroenterologist, and from UCSF, and all of which noted the diagnosis of her IBS, its consequential symptoms, and the associated weight-loss.[3] On this basis, the court finds that Plaintiff's Step Three challenge has not been waived.

      Turning to Defendant's secondary argument, the Commissioner submits that it is unclear that Plaintiff meets the requirements of Listing 5.08. Def.'s Mot. (Doc. 27) at 10-11. Listing 5.08 presumes disability in cases of "[w]eight-loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period." *Id.* at § 5.08. Defendant does not contest, and thus concedes, that Plaintiff's BMI numbers were consistently below 17.50.[4] Instead, Defendant

---

[3] *See* AR at 395-99, 537, 561-62, 616-17, 626-27, 651-52, 667-68, 682, 695-96, 713-14, 743-44, 750, 757-58, 766-67, 769-70, 777, 781, 792, 806, 821, 829, 870, 894-95, 926, 931, 1021, 1069, 1079, 1081, 1083, 1100, 1157-61, 1812, 1875, 2010.
[4] Defendant also notes (Def.'s Mot. (Doc. 27) at 10-11) that Plaintiff's weight sometimes went up

9

challenges whether this was *due to* any digestive disorder by arguing that "treatment records suggest her weight loss was due to her depression and anxiety." Def.'s Mot. (Doc. 27) at 10 (citing AR at 652). However, Defendant's reliance on this record citation is misplaced as it patently contradicts the assertion for which it was cited. (*See* AR at 652) (a March 3, 2012, record indicating that Plaintiff was seen "related to concerns about weight and IBS[,] has lost more weight with new rx that was supposed to relieve IBS symptoms.").

The Commissioner also asserts that Plaintiff's gastroenterologist, Dr. Metossian, opined that Plaintiff's anxiety disorder was likely the root of many of her symptoms. Def.'s Mot. (Doc. 27) at 10 (citing AR at 396). Again, Defendant characterizes the record inaccurately. (*See* AR at 396). Instead, Dr. Metossian opined that Plaintiff's sharp and persistent abdominal pains were not likely rooted in any underlying disorder he could identify, but that "the possibility of it being due to her frequent diarrhea and IBS is certainly possible." (*Id*.).

The Commissioner also suggests that Dr. Terciman at UCSF believed that "her chronic digestive issues were not the cause of her diarrhea and abdominal pain." Def.'s Mot. (Doc. 27) at 11 (citing AR at 1160-61). The Commissioner's reliance on this record citation is also misplaced because that citation does not pertain to Dr. Terciman at all – instead, the citation is to a record of mental health treatment at the Mendocino Community Health Clinic that took place on November 20, 2013. (*See id.*). As mentioned, Dr. Terciman's opinion, found elsewhere in the record, noted that Plaintiff's history of chronic diarrhea and weight-loss, "most likely represents IBS diarrhea predominant[ly] because her symptoms have actually improved with a trial of oral narcotics." (AR at 1157-61).

Lastly, the Commissioner notes that Plaintiff may have developed an eating disorder in October of 2013, which the Commissioner suggests may have been at the root of her weight loss. (*Id*. at 11). Likewise, this suggestion is unpersuasive. That Plaintiff may have later developed another mental impairment (eating disorder) in October of 2013, *after* she had already met the definition of "disability" under the Social Security Act, is of no import. Nor does the

---

temporarily by a small measure; however, this contention is irrelevant to the Listing 5.08 determination in that during the relevant period Plaintiff's BMI was always below 17.50.

10

Commissioner's speculation about a theoretically undiagnosed eating disorder, that may or may not have existed prior to October of 2013, suffice to raise any doubts about the reliability of the several medical opinions, and Plaintiff's testimony, indicating that chronic IBS was the cause of Plaintiff's weight loss during the period in question.

The court has reviewed and considered the record as a whole, including the testimonial and medical evidence of Plaintiff's IBS and its causal link to her weight-loss. The court finds that the ALJ erroneously disregarded, or discredited, this evidence. The court concludes that the ALJ's failure to consider and apply Listing 5.08 at Step Three was not supported by substantial evidence; instead, the overwhelming evidence to the contrary required the ALJ to find Plaintiff disabled.

### *Credit-As-True Doctrine:*

Having found that the Commissioner committed error by not finding Plaintiff disabled at Step Three under Listing 5.08, the court must now decide if remand for further proceedings is appropriate. It is well established that "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded [for further proceedings]." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). It is equally well established that courts are empowered to affirm, modify, or reverse a decision by the Commissioner, "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). Generally, remand with instructions to award benefits has been considered when it is clear from the record that a claimant is entitled to benefits. *Id*.

The credit-as-true doctrine was announced in *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988) ("*Varney II*"), where it was held that when "there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony . . . [instead] we will . . . take that testimony to be established as true." *Id*. at 1401. The doctrine promotes fairness and efficiency, given that remand for further proceedings can unduly delay income for those unable to work and yet entitled to

11

1 benefits. *Id*. at 1398.

2 The credit-as-true rule has been held to also apply to medical opinion evidence, in addition to claimant testimony. *Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989). The standard for applying the rule to either is embodied in a three-part test, "each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.

It should also be noted that "the required analysis centers on what the record evidence shows about the existence or non-existence of a disability." *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). Thus, even though all conditions of the credit-as-true rule might be satisfied, remand for further proceedings would still be appropriate if an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. *Garrison*, 759 F.3d at 1021. On the other hand, it would be an abuse of discretion for a district court to remand a case for further proceedings where the credit-as-true rule is satisfied and the record affords no reason to believe that the claimant is not, in fact, disabled. *Id*.

As discussed, Plaintiff provided both testimony and medical opinion regarding her IBS and its resulting symptoms and weight-loss. The evidence and testimony were not mentioned or analyzed at Step Three (AR at 25-26), however, the ALJ did mention the evidence in the context of formulating the RFC (*see id*. at 28, 29), noting that, "[t]he claimant was seen for her inability to gain weight and occasional diarrhea. Her physician thought it may be related to IBS and referred her for a consult in February 2012." Thus, it is clear that, at Step Three, the ALJ discredited Plaintiff's testimony ("I have IBS severe . . . I can't keep weight on"), as well as the medical opinion evidence ("claimant was seen for her inability to gain weight . . . [h]er physician thought it may be related to IBS").

***Record Development:***

12

The first part of the credit-as-true test requires the court to determine whether the record has been fully developed and if further administrative proceedings would serve any useful purpose. As stated, the Commissioner has conceded that Plaintiff's low BMI numbers met the standard in Listing 5.08 during the relevant portions of the disability period. Such a concession would be unavoidable on this record, given that Plaintiff was weighed by a physician nearly every week during the course of the disability period, while scoring disturbingly low BMI numbers consistently during that time – weighing as little as 87 pounds with a height of 5'7", yielding a BMI as low as 13.63 in August of 2012.

Following an emergency room visit in late 2011 with complaints of diarrhea and resulting weight-loss, Plaintiff was referred to Dr. Harry Metossian, a specialist in gastroenterology. Initially, Dr. Metossian diagnosed the cause of her weight-loss as, "chronic diarrhea of unclear etiology." (AR at 399). In February and March of 2012, her primary care provider opined that her weight-loss and diarrhea may be related to IBS. (AR at 617, 651). In May of 2012, Plaintiff was seen by Dr. Metossian again who noted that she appeared "extremely thin," with tenderness throughout the abdomen, and while Dr. Metossian was uncertain as to the cause of Plaintiff's sharp abdominal pains, he did note that "the possibility of it being due to her frequent diarrhea and IBS is certainly possible." (AR at 396). When Dr. Matossian referred Plaintiff for further examination for her weight-loss and chronic diarrhea at UCSF, Dr. Jonathan Terciman likewise opined that Plaintiff's history of chronic diarrhea and weight-loss, "most likely represents IBS diarrhea predominant[ly] because her symptoms have actually improved with a trial of oral narcotics." (*Id*. at 1157-61).

The record includes testimony by Plaintiff to the effect that severe IBS is the cause of her weight-loss and low BMI numbers. The record also includes voluminous medical records from Plaintiff's primary care provider, from her treating gastroenterologist, as well as from a specialist at UCSF, all of which are consistent in finding that Plaintiff's low BMI numbers and weight-loss are a result of her IBS. Thus, the court finds that the record has been fully developed and that no useful purpose would be served by any further administrative proceedings.

***Reasons for Rejecting the Evidence:***

13

1       The second part of the credit-as-true test requires the court to determine if the ALJ has
2   failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or
3   medical opinion. As mentioned, the ALJ provided no reason whatsoever for rejecting this
4   evidence; therefore, the court finds that the ALJ certainly did not provide a 'legally sufficient'
5   reason for doing do.

***The Effect on Disability Determination:***

The final part of the credit-as-true test requires the court to determine whether the ALJ would be required to find Plaintiff disabled on remand if the improperly discredited evidence were credited as true. Here, crediting Plaintiff's testimony and the medical opinions of her treating physicians and specialists as true would require a finding of presumptive disability at Step Three because Plaintiff's BMI was calculated at well below 17.50 from September of 2011 until October of 2013, which more than meets the Listing requirement of a "BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period." 20 C.F.R. Pt. 404, appendix 1, § 5.08. The court therefore finds that all three parts of the credit-as-true test are satisfied.

***Evaluation of the Record as a Whole:***

Upon finding that all elements of the credit-as-true standard are satisfied, this court must then evaluate the record as a whole in order to determine whether the record gives rise to any serious doubt that a claimant is, in fact, disabled. *See Garrison*, 759 F.3d at 1020-21.

Two points bear mentioning at this juncture. First, it should be noted that the Social Security Act defines "disability" as the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Second, at Step Three, the Commissioner considers the medical severity of the impairments found to have been determined at Step Two, such that if they meet or equal one of the listings in 20 C.F.R. Pt. 404, appendix 1, a finding of disability will be entered without further inquiry. 20 C.F.R. § 404.1520(a). Therefore, considering Listing 5.08, Plaintiff's disability is presumed if she suffered "[w]eight-loss due to any digestive disorder

14

despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period," (*id.* at § 5.08), and "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

Plaintiff's Listing 5.08 condition (weight loss due to IBS with frequently measured and consistent BMI numbers well under 17.50) is clearly documented in the record as having lasted *at least* from September of 2011 to October of 2013, and well beyond. This alone entitled Plaintiff to a disability finding at Step Three.

Thus, because a review of the record as a whole gives rise to no serious doubt that Plaintiff is in fact disabled, this matter is remanded to the Commissioner for calculation and award of appropriate benefits. Finally, because the court finds error at Step Three, warranting a reversal and remand for calculation and payment of benefits, the remainder of Plaintiff's issues are moot.

## CONCLUSION

For the reasons stated above, the court GRANTS Plaintiff's motion for summary judgment, DENIES Defendant's motion for summary judgment, REVERSES the ALJ's determination and REMANDS this matter for calculation and award of appropriate benefits.

A separate judgment will issue.

**IT IS SO ORDERED.**

Dated: March 20, 2018.

ROBERT M. ILLMAN
United States Magistrate Judge

15